STATE, EX REL. THOMAS HOCTOR ET AL., RELATORS AND APPELLEES, V. PATRICK J. TRAINOR ET AL., RESPONDENTS AND APPELLANTS.

FILED SEPTEMBER 28, 1912. No. 17,765.

1. **Mandamus:** ELECTIONS: VOLUNTARY SURRENDER OF OFFICE. Respondents, who held the offices of mayor and city clerk, respectively, were by a writ of mandamus ordered to call a primary and a general election, in advance of the time when, as they contended, such election should have been called. They complied with the command of the writ by calling such elections. Thereafter, upon presentation of their certificates of election by the persons elected at such election as respondents' successors, respondents turned over their respective offices, together with all of the books, papers and documents pertaining thereto, to their said successors, who have ever since held and are now holding and administering the same. *Held,* That the surrender of their said offices by respondents was voluntary on their part.

2. **Appeal:** DISMISSAL. And in such a case an appeal by respondents of such mandamus action, prosecuted to this court after such voluntary surrender of their offices, will, upon motion, be dismissed, on the ground that a decision in this court in such action could afford no actual relief and would be followed by no practical results.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Dismissed.*

*Brome, Ellick & Brome* and *Benjamin S. Baker,* for appellants.

*A. H. Murdock* and *Sullivan & Rait, contra.*

FAWCETT, J.

The respondents Trainor and Good were on April 5, 1910, elected as mayor and city clerk, respectively, of the city of South Omaha. Their term of office, under the law as it then stood, was for two years, or until April, 1912. The legislature of 1911 amended the law under which the city of South Omaha was organized, so as to abrogate the holding of a city election in that city in the year 1912, and providing for the holding of the next election in May, 1913, and likewise providing that all of the elective officers of the city should hold their respective offices until such election in 1913. The relators, believing such amendment to be unconstitutional, at the proper time in 1912, if an election were to be held that year, tendered their petitions and filing fees as candidates for the offices of mayor and city clerk, respectively, to be voted for at an election which they contended should be held in April, 1912. The city clerk refused to file such petitions, giving as his reason therefor the amendment above referred to; whereupon the relators brought this action in the district court for Douglas county, praying for a writ of mandamus to compel the respondent Trainor, as mayor, to issue his proclamation calling for a primary election to be held on the 27th of February, 1912, and thereafter to issue the necessary proclamation and notices for the calling of a general election to be held in said city on April 2, 1912, and ordering the respondent Good, as city clerk, to receive the petitions tendered, etc. Upon hearing, the district court found the amendment of 1911 to be unconstitutional and ordered a writ to issue as prayed. Without further resistance, the respondents proceeded to call a primary election in February and a general election in April, at which election the relator Hoctor was elected mayor, to succeed the respondent Trainor, and one Perry McD. Wheeler was elected to

57

the office of city clerk to succeed the respondent Good. The returns of both the primary and general elections were duly canvassed by the proper authorities of the city, and Mr. Hoctor and Mr. Wheeler were declared duly elected to the offices of mayor and city clerk, respectively; whereupon, the respondents delivered up to their said successors their respective offices and all of the books, papers, and documents pertaining thereto, and such offices have ever since been administered by such successors. Nothing further was done in the case by the relators until after this court on June 22, 1912, handed down its opinion in *State v. Ryan, ante,* p. 696. In that case we held the amendment of 1911, above referred to, to be valid. Thereupon respondents filed their appeal in this court. Relators now move to dismiss the appeal upon several grounds, among which are: "(3) For the reason that the judgment of the lower court has been fully complied with, by the appellants herein, and that any judgment that this court might enter could not be enforced, as the time for any relief to appellants herein has long since elapsed;" and "(4) for the reason that any questions that might now be presented to this court in this action would be nothing but moot questions, and would not afford relief to either of the parties herein."

The motion appears to be meritorious. When the district court made its finding in favor of the relators and ordered the writ to issue as prayed, the respondents acquiesced in the judgment so rendered. They made no application to the district court for a supersedeas, which that court would have had power to grant (*Cooperrider v. State,* 46 Neb. 84; *Home Fire Ins. Co. v. Dutcher,* 48 Neb. 755), but, without further remonstrance or any attempt at appeal, they turned over their offices to the parties elected at the election called by them in obedience to the order of the district court. The writ issued by the district court did not command respondents to turn over their offices. It simply ordered them to call a primary and a general election. When they issued their calls for

those elections they did all that the writ commanded. Hence, when they surrendered their offices they did not do so in response to the command of the writ. They surrendered them in submission to and in recognition of the certificates of election presented by their alleged successors. So far as the writ of mandamus was concerned, they had complied with its commands, and as to them that action was at an end. If they felt that the election under which their successors were claiming was void, they should have stood upon their legal rights and have refused to turn over their offices. This they did not do. Their surrender of their offices was, therefore, voluntary on their part. This being true, we see no way by which they could be rein: stated in their offices, even if we were to entertain the present appeal and reverse the judgment of the district court. In *Betts v. State,* 67 Neb. 202, we held: "A re- spondent in mandamus proceedings, against whom a writ has been issued, and who has performed its commands, after the allowance of a supersedeas and before his motion for a new trial has been disposed of, is not entitled to a review in this court of the question whether the writ should have originally been granted, especially where the judgment complained of provides for his reimbursement for costs and where his official term has meanwhile expired." We can see no difference between a case where the respondent's official term "has meanwhile expired" and one where he has fully complied with the mandate of the district court in a mandamus proceeding, and has sub: sequently voluntarily surrendered his office.

In *Farquharson v. State,* 26 Okla. 767, 110 Pac. 909, in an action very similar to the one at bar, it is held: "Where, pending appeal from a decree granting a mandamus directing the mayor of a city to call an election, the mayor calls the election, and the election is held before final decision is made upon the appeal, the appeal will be dismissed, upon the ground that the decision can afford no actual relief and will be followed by no practical results."

In *San Diego School District v. Supervisors,* 97 Cal.

438, it is held: "An appeal by a board of supervisors from a judgment in a mandamus proceeding, directing them to levy a tax for school purposes, will be dismissed upon motion, where it appears that after the judgment, and before the taking of the appeal, the board voluntarily complied with the mandate of the trial court by levying the tax."

In *State v. Napton*, 10 Mont. 369, the court uses language which is apt here: "A judgment of any kind from this court would present a peculiar result. An affirmance would be to direct the district court to issue a writ, which that court has already issued, and which has been obeyed. A reversal would be to say to the lower court, you may not order the clerk to do that which he has already fully performed. It is apparent that there is no controversy before us. The case is fictitious."

As this case now stands, it presents nothing, outside of a question of costs, except a moot question, and, as said in *Betts v. State, supra,* the matter of costs "will not alone afford such a subject of controversy as an appellate court will consider."

The motion is sustained and the appeal

DISMISSED.